WALKER *v.* WALKER, et al.
May 10, 1954
No. 39236          64 Adv. S. 77          72 So. 2d 243

*Guyton & Allen,* Kosciusko, for appellant.

*Robertson Horton,* Winona, for appellee George H. Flowers.

*Rupert Ringold,* Winona, for appellees.

Lee, J.

This cause is a sequel to Walker v. Walker, 214 Miss. 529, 59 So. 2d 277.

The chancery court, on remand, appointed commissioners who promptly cruised and appraised the quantity and value of the timber, and made report of their actions.

Thereafter, by decree of date of December 8, 1952, the court adjudicated the quantity and value of the timber and the respective interests of the parties, ordered a sale, appointed a special commissioner for that purpose, and fixed January 3, 1953, as the date therefor. However, the sale was delayed and did not occur until February 21, 1953. At that time, it was consummated for a consideration of $30,100, and the commissioner in due course made his report for confirmation. On February 27, 1953, nine of the eleven original owners filed their petition to change and modify the terms of the decree of December 8, 1952, in regard to the respective interests of the parties. They attached, as exhibits thereto, a deed whereby ten of the owners, on January 31, 1953, conveyed their interest in the timber to Mrs. Ginsey Walker, their mother, the other owner, and another deed, dated February 21, 1953, whereby after reserving $6,000 of the proceeds to herself, Mrs. Ginsey Walker provided that the balance of the proceeds from the sale should be divided among her and her sons and daughters, share and share alike, that is, a one-eleventh thereof to each.

Horton A. Walker and John L. Walker, two of the original owners, filed an answer in which they admitted that they, along with their eight brothers and sisters, signed and delivered the deed to their mother; but stated that they did so with the understanding that she would receive the entire proceeds; that Horton, who would have been entitled to receive $7,474.61 under the decree of December 8, 1952, would actually receive only $2,101.58 under the change and modification sought; and that he was unwilling to give any part of his interest to his brothers and sisters.

The sale was confirmed by decree of date of February 28, 1953, but the question of change and modification as to the distributive shares of the parties was taken under advisement. Briefs were submitted. Both the petition and the answer were sworn to by the respective parties, but no oral evidence was offered. The court held that, by virtue of the proceedings, the title to the timber had been divested out of the parties and had been vested in the commissioner, and that the two deeds in fact constituted an assignment to the mother of a $6,000 equity in the proceeds of the sale. The final decree granted the change and modification as prayed for, and allowed the special commissioner $917 as compensation for his services over the mere oral objection of two contestants. Horton A. Walker was aggrieved at both provisions of the decree and has appealed here.

■■■ As to the commissioner's fee, it is provided by Par. (j), Section 3943, Code of 1942, that commissioners, for making sales under decrees, shall be entitled to the same fees as are allowed sheriffs on sales under execution. By Par. (x), Section 3936, Code of 1942, sheriffs are allowed on all money made by virtue of an execution the following commissions: "On the first one hundred dollars—three per centum. On the second one hundred dollars—two per centum. On all sums over two hundred dollars—one per centum."

By an act of February 10, 1844, Art. 21, pp. 486-7, Hutchinson's Code 1798 to 1848, it was provided:

"Commissions in Chancery.
"Hereafter they shall receive the same commissions on sales, under a decree of a Court of Chancery, which sheriffs receive on sales under execution, and no more."

For many years, the fees of commissioners have been determined, in amount, by reference to the fees which sheriffs are allowed in making sales under execution. See Hutchinson's Code, supra; Section 453, Code of 1880;

Section 2009, Code of 1892; Section 2185, Code of 1906; Section 1795, Code of 1930; Section 3943, supra.

Thus the Legislature, from time to time, has clearly intended and adopted the principle that commissioners, for their services in making sales under decrees, shall receive the same compensation as sheriffs in making sales under execution. Consequently, as the Legislature increases or diminishes such compensation of sheriffs, in like manner the fees of commissioners are affected. A good statement of the governing principle in this case is found in 25 R. C. L., Statutes, Section 160, pp. 907-8, a part of which is as follows: "When the adopting statute makes no reference to any particular statute or part of statute by its title or otherwise, but refers to the law generally which governs a particular subject, the reference in such a case includes not only the law in force at the date of the adopting act but also all subsequent laws on the particular subject referred to, so far at least as they are consistent with the purposes of the adopting act."

The question here arises because of the enactment of Chap. 250, Laws of 1950, which, among other things, amended Par. (x), Section 3936, Code of 1942, so as to increase the commissions of sheriffs by reason of sales under execution as follows: "On the first one hundred dollars—five per centum. On the second one hundred dollars—four per centum. On all sums over two hundred dollars—three per centum."

If this sale had been made by the sheriff under execution, he would have been entitled to the amount which the court allowed the commissioner. Since the commissioner is entitled to like fees as sheriffs for sales under execution, the allowance to him was proper and in accordance with the law.

The appellant contends that the two deeds constituted one transaction, and the minds of the parties did not meet; that there was no consideration for their execution;

and that the timber was personalty and a gift thereof was incomplete without delivery of actual possession.

The chancellor was correct in holding that the parties had no title to the timber, and that the two deeds also constituted an assignment. In addition the parties were all adults, and the sons and daughters, by their deed, in no way limited the mother's title except as to the period in which the timber could be removed. Undoubtedly these two instruments also amounted to an attempted family settlement, and such settlements are favored by the courts.

In Strong v. Cowsen, 197 Miss. 282, 19 So. 2d 813, a deed of partition had been executed by agreement of the parties, under the belief that they were the owners of the property as tenants in common. Although the proof was sufficient to show that Lettie Cowsen, in fact, had no interest in the property, the partition was upheld as a family settlement. The Court cited Pierce v. Garrett, 142 Miss. 641, 107 So. 885, and Spencer v. Spencer, 115 Miss. 71, 75 So. 770, and quoted from 12 C. J. 322, as follows: "Compromises having for their object the settlement of family difficulties or controversies are favored at law and in equity if at all reasonable. The termination of such controversies is considered a valid and sufficient consideration for the agreement, and the court will go further to sustain it than it would under ordinary circumstances. Accordingly, it has been laid down as a general rule that a family agreement entered into on the supposition of a right, or of a doubtful right, although it afterward turns out that the right was on the other side, is binding, and the right cannot prevail against the agreement of the parties . . . Applications of the foregoing rules have frequently been made in the case of settlements as to the distribution of the property of a decedent."

See also 15 C. J. S., Compromise and Settlement, Section 3b, p. 715, where it is said: "Family settlements are

favored, and will be upheld in the absence of fraud; * * *." See also Section 9b, p. 727 thereof.

There was no proof whatever of fraud. In fact there was no oral proof at all.

Consequently it follows that the decree of the Court ought to be, and is, affirmed.

Affirmed.

*Roberds, P. J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.