STATE OF MISSISSIPPI, et al. *v.* GARDNER, et al.

No. 41176      May 25, 1959      112 So. 2d 362

*Matthew Harper, Jr.,* Asst. Atty. Gen., Jackson, for appellants.

*Swep S. Taylor, Jr., W. B. Fontaine,* Jackson; *John K. Keyes,* Collins, for appellees and cross-appellants, Mrs. Winnie W. Gardner, et al.

*O. B. Triplett, Jr.,* Forest; *James A. Alexander, Sr.,* Jackson, for appellees, devisees and assignees of Robert York, deceased.

*W. Calvin Wells, III, W. C. Wells, Jr., Martha W. Gerald,* Jackson; *Luther D. Pittman,* Raleigh, for appellee, The California Company.

HALL, J.

This suit was brought by Mrs. Winnie M. Gardner and the heirs-at-law, of which she was one, of D. A. Wilkinson, deceased, against the State of Mississippi, the State Land Commissioner, the Attorney General, the California Company as lessee, three individuals as lessees, and the devisees and grantees of Robert York, deceased, seeking a cancellation of a forfeited tax land patent from the State to Mrs. Winnie W. Gardner, and seeking a cancellation of the claims of the devisees and grantees of Robert York and leases held by the California Company on forty acres of land in Smith County.

Answer was filed by the State, the Land Commissioner and the Attorney General, and a cross bill was filed by the York devisees and grantees and by the California Company.

The alleged title of the State arose out of an alleged tax sale to the State, the legality of which was attacked by the Wilkinson heirs, the York devisees and grantees, and the California Company.

Returning first to the question of the legality of the alleged tax sale, the forty acres in question, together with another adjoining forty acres, were assessed for 1946 as the property of D. A. Wilkinson, and this assessment appears on one page of the assessment roll, and two pages later of the assessment roll there was an entirely different assessment to D. A. Wilkinson of an-

other forty acres of land and a twenty-acre tract of land. Actually D. A. Wilkinson was not the owner of all of this land and the owners came in and paid their respective taxes. The sheriff and tax collector had made out his tax receipts in accordance with these separate assessments and when these respective owners came in and paid their taxes, the sheriff struck out the forty acres which had been assessed with the land here in question and also struck out the other land which had been assessed with the twenty acres in question, and the sheriff then proceeded to group together on one tax receipt the forty acres in question and the said twenty acres so as to make the same appear as one assessment of contiguous land to D. A. Wilkinson, but the forty acres in suit here and the said twenty acres were not contiguous and were widely separated. The sheriff advertised the Wilkinson forty-acre tract and the twenty-acre tract as one assessment and struck off and sold the two tracts to the State of Mississippi as a single entity on September 15, 1947, pursuant to said advertisement. On December 21, 1950, the State issued to Mrs. D. A. Wilkinson (now Mrs. Winnie W. Gardner) its forfeited tax land patent, reserving in the State its usual one-half of the usual one-eighth royalty interest in and to said forty acres of land. Mrs. Gardner of course, being a tenant-in-common with the other heirs of D. A. Wilkinson, acquired her title from the State, if any, for the use and benefit of all the heirs.

In the case of Slush v. Patterson, 201 Miss. 113, 28 So. 2d 738, quoting from the syllabus, the Court held: ''Where tax receipt, which was never delivered because of nonpayment of taxes, showed that taxes were computed on total value of four widely separated tracts of uncultivable land, and notice of tax collector's sale calculated total of taxes and damages as if the tracts were a single entity and list of lands sold to the State did the same thing, the presumption that tax collector had sold the four tracts separately as required by law was over-

come, and the tax sale was void.'' It is our opinion that under this authority the tax sale to the State in this case was absolutely void and that the title to the forty acres in question continued to be vested in the heirs of D. A. Wilkinson, deceased, and that the reservation of one-half of the usual one-eighth royalty in the State was likewise void.

■■■ The State contends that the proceedings in question are valid under Section 9790 and Section 9923 of the Miss. Code of 1942. We do not think that Section 9790 has any application whatsoever to the facts of this case hereinabove related. That section refers to the approval by the board of supervisors of the assessment roll at the August meeting and says that all persons who failed to file objections shall be concluded by the assessment and precluded from questioning its validity after its final approval by the board. There was nothing wrong in this case with the assessment as made by the board and as it appears on the assessment roll. The trouble is with the action of the sheriff and tax collector in making a new assessment and in lumping the two separated tracts of land on a new tax receipt as one entity and in so advertising and selling the land to the State.

■■■ The State also relies on Section 9923 of the Code of 1942, as amended by Chapter 69 of the Laws of Ex. Sess. of 1938. Without quoting that section in full, it says near the middle thereof: ''Each separate assessment as it appears and is described *on the assessment roll* shall constitute one tract for the purpose of sale for taxes, notwithstanding the fact that the person who is the owner thereof or to whom it is assessed, is the owner of or is assessed with other lands, the whole of which constitute one entire tract but appears *on the assessment roll* in separate subdivisions.'' (Emphasis supplied.) The trouble here is that the two widely separated tracts did not appear on the assessment roll as

a unit, and we do not think that Section 9923 has the effect of saving the case for the State.

The State also contends that the Wilkinson heirs are barred from questioning the validity of the forfeited tax land patent, in support of which position they rely on a quotation from the case of Smith v. Smith, 211 Miss. 481, 52 So. 2d 1, to the effect that a party to a suit cannot assume one position one year and an entirely different position with reference to the same piece of land the next year, or in other words, that a party cannot "blow hot" one year and then "blow cold" the next year. We have no idea of departing from what was said in the Smith case, but the facts in this case are entirely different. Here the lessee, the California Company, had an abstract of title made to the forty acres in question and had referred this abstract to a capable lawyer in Jackson for examination and report on the title. It is undisputed that the details with reference to said tax sale did not appear in the abstract and the attorney for the California Company, since the forfeited tax land patent was not ten years old, made as one of the requirements to the approval of title a suit against the State for validation of the title, and a representative of the California Company went to see Mrs. Gardner and discussed the question with her and she agreed to go along with the California Company in anything necessary, or deemed necessary, to perfect the title, and accordingly the validation proceeding was prepared by the attorney for the California Company and was signed by Mrs. Gardner without any knowledge of the fact that the tax sale was void. Under these circumstances we do not think that Mrs. Gardner has knowingly assumed an inconsistent position in having the State patent validated and then later questioning the validity of the tax sale because she knew nothing about the validity of the tax sale at the time she signed the bill for validation against the State, and we do not

think that the doctrine of estoppel applies here as contended by the State. ■■■ In the case of Yazoo Lumber Company v. Alice B. Clark, 95 Miss. 244, 48 So. 516, the Court held that estoppel cannot be predicated on declarations touching an interest in property made in ignorance of the declarant's rights.

In the cross-appeal taken by Mrs. Winnie W. Gardner and the other Wilkinson heirs, they contend that the York devisees and grantees are bound by a judgment obtained by York against D. A. Wilkinson in the Federal Court on November 5, 1945, as fully outlined in the case of Mrs. Winnie W. Gardner, et al. v. State of Mississippi, et al., 108 So. 2d 592, not yet reported in State Reports. In the Federal Court case it appeared that Wilkinson had purported to convey to York a total of one hundred mineral acres by a mineral conveyance, when in fact the one hundred mineral acres were not owned by Wilkinson and York brought suit against him for fraud and deceit and obtained a money judgment against him in the total amount of $2,500. Incidentally this judgment has never been paid and is long since barred by the statute of limitations, but the Wilkinson heirs now, at this late date, very generously offer to pay the amount of the judgment. They say that the act of suing for and obtaining a judgment against Wilkinson constiuted an election of remedies, and that since York chose to file suit and obtained judgment against Wilkinson, he elected that as his only remedy for the deficiency in the land sought to be conveyed. Actually York at the moment of the conveyance got no title in the forty acres in question for the reason that Wilkinson had no title thereto, but at that time the title was in P. L. Arinder, and nearly a year after the sale to York, Wilkinson acquired title from P. L. Arinder, and under the doctrine of after-acquired title, York's undivided one-fourth interest in the minerals under the land in question became perfected.

We think that the doctrine of election of remedies has no bearing on this case for the reason that York had the right to sue for damages for the fraud and deceit committed upon him by Wilkinson and that the Wilkinson heirs, because of such fraud and deceit, cannot raise such a defense against York and his grantees. In this connection we point out that York did not rescind or seek to rescind his purchase from Wilkinson but merely obtained a judgment for damages for Wilkinson's fraud, and we do not think that such a judgment barred York and his grantees from asserting their claim to the title which had been made good. In this connection, see Sumrall v. Sumrall, 24 Miss. 258.

What we have said disposes of the question of the ownership of the surface and mineral rights. Various individuals obtained oil, gas and mineral leases on the land in question from the owners of the mineral interests and eventually all of these were purchased by and were assigned to the California Company, and in this suit that Company filed a cross bill praying that it be adjudged to be the owner of the mineral lease on the land in question and the decree of the lower court granted the prayer of this cross bill.

We think that the learned chancellor correctly decided all of the issues in this case and that his final decree should be affirmed.

Affirmed.

*Roberds*, P. J., and *Holmes, Ethridge* and *Gillespie, JJ.*, concur.